Good morning, Your Honors. Donald Cook for plaintiffs. With me is my co-counsel Mr. Flynn. On the motion to amend, to bring in the officers as though defendants, if this case were in state court, not only would the motion have been granted, had it been denied, I submit, it would have been reversed. That's how strong California law is on Doe amendments. Now, you're obviously familiar with the Cabrales decision, holds that the California law for naming Doe defendants is a substantive law on statute of limitations, tolling, its applications applicable in federal court. But let me offer something. Can I ask you about that? How does that fundamentally change the case? I mean, ultimately your claim seemed to rise or fall with the police department or with the county. Why are you so concerned about adding additional defendants here? Sure, and I'm just going to get into that because I think it explains what happened here, what Judge Chabria saw was game playing on my part. Plaintiffs did not sue the individual Chabria for some reason overlooked it because he bifurcated, make a separate finding on individual officer liability early in the case at that November 15, 2016, scheduling conference, even though they're not in the case. The reason I did not name them is because you read the reports, you've got an audio recording of the break-in, these officers are following policy. If I understand your question correctly, this is a case of the officers doing what they were told and trained to do, plaintiff contends it's a constitutional violation. But if the officers are in the dock before the jury, the fact that they follow policy, follow training is a factor that cuts in their favor. A jury hears that, they think he acts reasonably. I mean, some may say, well, that's a following orders defense, and yes it is, but let's be real here. We're not talking about Nazis, okay? We're not talking about something that's so over the line that everyone would agree that just because you're told to do it doesn't make it right. Well, and so I'm not trying to cut you off. There's a lot of issues in this case, but as I understand it, it's a tactical reason for you at trial. That's ultimately what it it didn't seem to matter to me, or I couldn't see how it could matter, but... Well, yeah, and I agree with you. As I first saw the case, when I got the reports, my objective is to secure compensation for my clients the most easiest, most effective way I can. Having the officers as basically non-parties made a lot of sense to me because I know they're the policy that's the problem here, and they'll make their decision on that basis. What happened is, nine months down the road, the defense, about the time they filed their summary judgment motion, and I took their expert deposition, was taking the position, we're going to argue that your evidence is insufficient to show Monell liability. Right. Well, that was obvious that that was what they were going to do. Okay, okay, and that's legitimate. I'm not saying that that's a dirty play on their part. It's not. They're entitled to defend on any basis. I didn't think there was a factual basis for it that would survive summary judgment. Turns out Judge Chabria had a different view of it, but okay, well, I will bring in the officers then, all right? If you're going to take that position, I will bring them in. That's why I brought them in. How long elapsed between the time of filing the complaint and your seeking to amend to the officers? It was basically about, well, complaint was filed in November of 2016. The Silva 2 complaint, which is really the first notice that we're bringing them in, was filed around November 13th of 2017, so technically about a year, but I was on, I waited to file that Silva 2 complaint until after their summary judgment motion was heard because I did not want to give any credence to their argument that they were making that you have to have the defendants. So you filed Silva 2, Judge Chabria says that looks like claim splitting to me under Adams. Actually, he said it was a duplicated action and therefore unnecessary, and he dismissed it on that basis, and my feeling was, I mean, it is a duplicated action. So once Silva 2 is dismissed, you seek to amend to add in Silva 1 these officers, and Judge Chabria says it's too late. Number one, there's delay, says Judge Chabria, and number two, there is some prejudice to the defendants who you're now seeking to add because they've been subject to discovery. They were not defendants. They might have given slightly different answers had they been defendants and had they been represented by attorneys at that time. And this is abuse of discretion. How do we reverse on an abuse of discretion standard when it comes this late, discovery's already closed, you've been conducting discovery on the legal theory that we are not going after the officers, and all of a sudden you want the officers. If I can just correct some of the assumptions you're making about the record in your question. At the time I filed Silva 2 and served it, they had notice, trial was more than six months away, discovery had been reopened. They had notice of what? They had notice that they were being sued for the same constitutional violations that were asserted in this case, Silva 1, on the exact same factual theory. When discovery was done under Silva 1, they were not yet named, correct? Well, before discovery was reopened, correct, they were not named. Discovery was reopened in Silva 1, and that's when they got notice that they were being sued in Silva 2. Discovery had been reopened. So that's, but you are correct that when they were deposed, they were not parties. I submit that whether you're a witness or a defendant, your obligation is the same when you're in deposition or in trial to tell the truth. They're being represented by the same attorney. They have exactly the same interests as the city had in this case, which is their position. We acted lawfully. We acted constitutionally. We did nothing wrong. So... As a formal matter, were the officers represented by an attorney when they were being deposed? Yes, they were represented by Mr. Blackman. And I understand the attorney might have been in the room. Were they represented? They, Mr. Blackman represented them at deposition, gave instructions not to answer. He also later on the motion... Was he giving them, I guess he couldn't have given them instructions if he was just representing the police department. You're saying they were personally represented by him. Personally represented by him. And later on the motion... Because the theory was there was no conflict between those individuals in the city. Exactly. They had, I mean, the factual theories to what happened here has always been the same, never changed. And even on the motion to amend, Mr. Blackman admitted that, well, yeah, I'll be representing the officers in this case if they're brought in. They're not going to have separate counsel. Can I ask a question about the official capacity? If you go and read the complaint, you clearly say official and individual capacity. Is that the beginning and the end of our analysis? I mean, I think the problem is the course of proceedings seem to depart from that slightly. And there's a debate about how much. But in these official capacity, individual capacity suits, do we just go look at the complaint? And if the case law, as I read it, says, you know, if you don't identify it in the complaint, then we look to the course of proceedings. My question is, is there case law to say, if you do say official and individual capacity, can we look to the course of proceedings to see whether you've departed from that? Well, I think you pretty much start with the complaint. Lorez versus City of Los Angeles, a 1991 decision, there was an issue of whether then Chief Darrell Gates was sued in his individual capacity. And the Ninth Circuit said, well, wait a minute, he was named in individual capacity. Punitive damages were sought against him in the complaint. Therefore, he's in the case in his individual capacity. But just to be clear in the record in this case, civil one, the complaint as filed, did not name any officer as a defendant, whether official or individual capacity. You named the police chief, right? I'm just going to say that. The police chief was the only individual name. Rosales, right? Yeah, Chief Rosales. Now, she is kind of in a unique setting. And in Lorez's case, I think, best illustrates the point. Her liability is not based on the fact that she's there telling the officers to do this and that. She's not, right? It's all after the fact she's chief of police. If you establish her individual liability, because of her role as chief of police and policymaker, you will also establish Monell liability. And that's the Lorez case. Yeah. So, I mean, I don't see you having a strong case against Rosales in her individual capacity. But I think that's a different question from, did you plead it? And if you pled it, is that the end of it? Because once you start getting into the course of proceedings, if we can consider that, your case on individual capacity becomes weaker, in my opinion. Well, I would disagree with you for this reason. The point I just made about when you've got a chief of police in the dock, based on the chief's ratification, like in Lorez, the evidence of Monell liability and the evidence against the chief in the individual capacity overlaps. And Lorez specifically mentions this. And it happens to be because of their unique status as being a policymaker for the city. So, but how, explain to me how ratification applies here. Why is it Monell liability if they ratify it after the fact? I mean, doesn't Monell liability rise and fall on whether there was a policy, whether they were acting pursuant to the policy? The fact that you later ratified it, I mean, what's the suggestion, that that retroactively made it part of the policy? Well, I think the confusion comes about because first you had the general statement, Monell policy and practice are custom. So. And you're not acting, you're not pleading policy or custom here. It's all, excuse me, practice or custom. You're only pleading policy, right? We're not, we're not bringing in a bunch of other incidents, if that's what you're referring to. Well, right. But doesn't that preclude practice, which ratification seems to me to go more to practice, less to policy. Well, I would agree with you that it does go more to practice. But the point is, and you see it in this case, you have very general policies. Be reasonable, do the right thing. And who knows what that means? Well, you're running short on time, so let me short circuit this by just a little bit. Judge Chabria, in his order, says that ratification in the Ninth Circuit case law can mean one of two things. It can mean after the fact approval. It can be, on the other hand, evidence of existing policy. And he grants summary judgment against you, saying that you're arguing only that ratification was after the fact approval. And he says, well, if that's so, that cannot be causative. But I have to say, and I hope you're listening for the city, I did not see your argument as exclusively or even particularly arguing that. I saw your Rosales says this is consistent with policy. And when the defendant expert, I mean their own expert, says on two findings, this is policy, I view this as evidence of policy rather than ratification, which then tells us in the future that that's going to be okay and causal. Well, yes. I mean, ratification in this case is like an admission, acceptance and admission by a policymaker, that these officers did what we told and trained them to do. That makes it interesting. It isn't admission. I mean, ratification, not while the activity is happening, but sometimes after that, is basically an admission. But that's not in any way contributing to the activities, which are the subject matter of the lawsuit, right? It's just saying, oh, this is what the policy means. But it hasn't caused the officers to do anything. That statement hasn't caused it. Well. And don't you think there has to be some sort of causal connection by way of ratification to the activities of the officers, which are the gravamen of the offense? Yes, there always has to be causation. But here's how it would work with ratification. It's not just that the chief gave her approval, but you have to establish what was the basis of her approval? What was she relying on? And is the chief approving the factual claims, the basis that forms the constitutional violation? I mean, if you have an officer supposedly hitting somebody in the head with a baton, that's what the plaintiff says. The officer says, I didn't do it. And the chief just says, well, the conduct is within policy. What's the chief ratifying in that case? Hitting on the head with a baton or the officer's version? You don't know. In this case, we know that the chief was ratifying the basis of the constitutional violation that plaintiff alleged. Entry without exigent circumstances, not giving knock notice, the bad arrest, and the use of force. But, you know, if you had some evidence about policy or custom, you know, then maybe the chief's comment about the policy would be this policy and custom. But you don't have that. That's not what you're relying upon in any particular way. And it seems to me that without having the policy and custom in a Monell claim, you're basically just relying upon the policy. And this statement of the chief does nothing other than be an admission. I know I'm over time. If I can have a very brief response. Please answer. The problem in the question is to accept that proposition is to encourage agencies to be as general, nonspecific in their policies as possible because then plaintiff will never be able to point to a particular policy as being the cause of the injury. But, of course, when subordinates are being reviewed to determine whether or not they acted within policy or not, the chiefs will be making decisions like to do like Rosales does here. She knows the department. She knows how it operates. This is within policy or it's not within policy. Okay. I know I'm over. Let's hear from the other side. But we will give you a chance to respond. Thank you. May it please the court. My name is Noah Blackman on behalf of the defendants and the appellees. The court should affirm the rulings by Judge Chabria. Let's start with the motion for leave to amend. To answer one of your Honor's questions, the complaint was filed initially August of 2016 and Mr. Cook did not file his motion for leave until February of 2018, so some 15 to 16 months later. Between those two points in time, we had a multitude of depositions. We had experts retained, experts deposed. We had motions for summary judgment filed. Essentially, the case was fully litigated. So that's point number one. Point number two, clearly, Mr. Cook, on behalf of his clients, made various litigation choices about which direction the case may go. When we filed our motion for summary judgment, the first one pointing out there was no individuals named, he said essentially to the court, that's because we intentionally are filing only a Monell case. So that reset the direction of the case and that's why the court opened up Monell discovery and we went forward with briefing on the second motion. So, I mean, I think you have a pretty strong argument on the amended complaint. The Chief Rosales, can you address my question of do you just look at the complaint and that's the beginning of the end? Because what's interesting is the concession you just made sort of suggests that the course of proceedings went against individual liability to Rosales, but I'm wondering to what degree we can consider that if the complaint said individual capacity. Yes, the complaint did say individual and official capacity. So during the individual phase of the case, we did discovery towards that issue and that's in the record. We asked specific interrogatories, what essentially are you claiming Judge Rosales is liable for Monell purposes, which was clear to Judge Chabria when we put that in the record. Wait a minute, is that exactly what they said? I mean, there's a specific interrogatory answer that Judge Chabria relies on and as I read that answer, it was, well, that question goes to both official and individual liability and because it goes to both, we won't answer. That's how I read that answer. Am I misreading that answer? I think that's one way the court could read it, but I don't believe that's the way. What other way is there to read it? Well, the other way to read it is the way Judge Chabria read it, which is it's unfair to Chief Rosales for the plaintiff to not identify her individual liability or culpability if they're claiming punitive damages against her. That was part of the case. What bothers me about that answer, which is Judge Chabria's answer, I mean, I'm not criticizing you, that is Judge Chabria's a bifurcation order, which is like one sentence in the minute order. We then have this response and then we have a further clarification order from Judge Chabria saying both sides seem to have misunderstood the nature of the bifurcation order for discovery. I'm now going to clarify that if the question goes to both individual capacity and personal capacity, because it was before the clarification, and I have trouble in that circumstance reading that answer to the interrogatory as an abandoning of the personal capacity suit. That's how we interpreted it. That's how the judge did it. I understand, Your Honor, but it would be patently unfair. You have nothing else. I think certainly Judge Chabria pointed to nothing else as abandoning the personal capacity suit against Rosales. I think that's right. It was pretty clear to him. Actually, there was a course of conduct throughout the litigation when Mr. Cook continuously said this was a Monell case, this was a Monell case. That belies the fact that he has individual liability claims against Chief Rosales as well, so there was a little bit more of a track record. I'm not sure it makes a lot of difference because the individual liability is really only supervisory liability. I'm not sure you're going to lose much on that, but I have trouble concluding with Judge Chabria that there was an abandonment of the personal capacity. I understand, Your Honor. There was, we believe, a long track record since Judge Chabria had a front row seat, had these various hearings, and started to understand when Mr. Cook clarified that he was going only towards Monell claims. Can I ask about the police department being independently sued as a separate entity, separate from the city? As I read the case law, that question, and there's prior case law that suggests that for purposes of California, which I think would apply here, that police departments are separate entities for purposes of a lawsuit. Now, that's under California law. Does that question automatically answer whether they are, quote, persons under Section 1983? And is there any argument that California law has changed in some way since we issued those prior decisions? The short answer, Your Honor, is they may be, entities like that may be subject to 1983 liability if the city, for example, is not named. So if you have a city and you have one of the departments named in the same case, the department now becomes a duplicative entity. It's a distinction without a difference because the city will be the one. Well, I sort of agree with that position. I'm not sure what it gets them to have the city and the police department in. Agreed. But the question is, can they do it? And it seems like perhaps they can, unless persons for Section 1983 liability is defined differently from whether they're a separate entity for general lawsuit purposes under state law. I think the cases that you see where it's allowed is when there's not an actual public entity named in the case. You only have the sheriff's department, for example, which is effectively the county in that case. But I agree. I don't think it matters in this instance. The city was a party, and that's why the police department was dismissed as duplicative. Can I move to the ratification question? Judge Chabry, in his order, I think accurately describes the Ninth Circuit case law saying that ratification can mean one of two things. It can mean after the fact ratification, which is to say that turns out that that's okay. Or it can mean, and it has sometimes meant in our case law, evidence of policy that preexisted the action in question. Judge Chabry says, but the plaintiffs never argued that ratification was evidence of policy. They only argued for cause. Now, assuming for a moment that the plaintiffs argued that the ratification was evidence of policy, and they didn't waive the argument, why is it not evidence of policy when Rosales says, after reviewing the episode, says this is consistent with policy, and the defendant's expert report says this was consistent with policy? Why are those two things, Rosales' statement and the expert report, why are they not evidence of preexisting policy? To show evidence that an approval by the chief would be showing a preexisting policy, I think you'd have to show, which I think the court has recognized, some prior instances to show why this in particular, this approval shows a widespread practice. That would be stronger evidence of policy, but if Rosales says, and I'm paraphrasing so it's not quite so clean as this, but if Rosales says, I read what happened, I know everything about what happened, and I recite it so we know that we're not fighting over what the facts are, and she says, that is consistent with our policy, why is that not evidence of what the policy is? The plaintiff has the burden to show the policy. No, I'm not asking about burden, I'm saying why is that not evidence of policy? Because the ratification has to be something that causes the violation. No, that's wrong, because as Vince Chabry himself said, we use that term ratification in two senses. Sometimes we use it in the sense of cause, and sometimes we use it in the sense of that is the policy that already existed. So this is not a cause question, this is an evidence question, and I'm asking you, why is that not evidence that that was in fact the policy? The reason that Judge Chabry couched it that way to answer Your Honor's question is, if you have something where there's ongoing other violations, and then you have an after the fact approval by the supervisor, it could relate back to those prior incidents. Those are the cases, that's where it is when you have ongoing violations. But simply because a department has a use of force policy and a canine policy. Let me do it differently then. I put Rosales on the stand, and I say, these things happened, we're not disputing what happened, and I ask Rosales, and I say, was that consistent with departmental policy with respect to use of canines? She says yes. Is that evidence of policy? It's certainly evidence of policy, but it's not evidence that the policy caused the constitutional violation, which is part of the analysis. Well, but it's evidence that the action of the officers was consistent with the policy. Right, but for ratification in this sense, it requires knowledge that there was a violation caused by the policy, essentially. Well, but if something's consistent with the policy, I think we can then assume, and now I'm only after the question whether there's evidence of the policy, whether it actually is the policy is a different question, but assume for purposes of what I'm about to say, that that is the policy, that the officers do know what the policy is, and the policy is, you can send a dog into a bedroom and whatever the facts are, that's consistent with policy. What more do you need? Well, if that was the case, Your Honor, then plaintiffs could argue ratification in any case when any department had some policy that said anything about the actions of the officers. Doesn't part of it depend on how the question is answered? If she says it's consistent with the policy, then Judge Fletcher's point seems to have some merit. If she says it's not inconsistent, or the policy doesn't address it, or it's not inconsistent with the policy, the policy's silent on that, then that seems to be a different question. And I'm more along the lines, I'm focused a little bit more on the expert report, which seems to hurt the city quite a bit here, but I'm concerned about this because do we just read the policy and make a decision on our own as if we're reading a statute and look at the plain language? How much can we rely on expert reports? My concern is if we start relying on expert reports, then all of a sudden all the plaintiffs are going to go get an expert that's going to make a factual dispute about whether this was, you know, consistent or controlled by the policy or not. And does that make a difference here? What's different about this case than perhaps like the Chu case, for example, just as an example. The Chu case had a policy that authorized the seizure of all concealed subjects, resistant, non-resistant, armed or unarmed, that type of thing. Our policy is more similar to the policy in the Lowry case, which allowed, gives officers discretion to use force pursuant to the Graham standards, if it's reasonable, that type of thing. So you have an incident that occurs, somebody is bit by a canine, for example, like in this case, you want the chiefs to review whether the use of force was appropriate or not and make decisions. So they review that, like what happened here, and the chief determined that the officers acted pursuant to the policy. So this is not ratification in the sense that you're going to be able to hold. I want to be clear, what is the position of the city here, that the officers, that this was not addressed by the policy, but she thought that what they did was okay, or she said the policy protects the activity that happened here? She was saying that the officers' actions were pursuant to their training practice and training. I'll just read you the exact language, which is, you paraphrased it accurately, she writes, I believe that it was within policy and training. That's what Rosales writes. So then the question is, how is that used? Is that just an admission? In which case, that becomes evidence, but that she can't be sued for that, but essentially what is at issue here is that this becomes the gravamen of her offense. That is, ratification, she describes the policy as the activities as consistent with the policy, and therefore she helped create the policy, and therefore she can be sued for the underlying incident? Is that what's being argued by the other side? I'm not certain actually what's being argued by the other side on that issue, but really a single occurrence and a post-incident approval is not sufficient in the Ninth Circuit for ratification. But you see, it's not merely an approval. It's a statement that is consistent with the policy, and then your very own expert says, on two separate opinions on whether this is consistent with policy, says this is consistent with policy. Now, that seems to me then a jury question as to whether or not this is sufficient evidence to, for the jury to conclude that the actions of the officers in this case were policy, and therefore menial liability. I agree with that. I don't regard it as slam dunk, but I regard it as sufficient evidence to get to the jury. Why am I wrong? The reason is, Your Honor, is because plaintiffs have the burden to show that the policy caused the violation. All the policy does is give the officers some guidance on when to make decisions. If the policy said that officers can always use their dog to bite suspects that are hidden, then that may be a jury question, because that may be an unconstitutional policy. Plaintiffs have to show there's a significant deficiency with the policy, that there's deliberate indifference in the policy. If this happened, and for the moment we're assuming that the narrative we've got is unquestioned, I don't think there's actually a lot of fight about what happened, and the police chief and your expert says this is consistent with policy. Manel says if it's consistent with the policy of the county employer or the city employer, the city is liable. I don't see how you can say there is no evidence that this was what happened, and it's why it happened, because here's the policy. The officers acted consistent with policy. We may assume that the officers knew what the policy was. Now, you can say, but in fact it wasn't the policy. You can make all kinds of arguments that this is the only instance of this ever having happened. I mean, you can present contrary evidence, but I think this is evidence that this was the policy. But to hold a city or a chief or whatnot liable under Monell, you have to show that there's a significant deficiency in the policy, that policy is unconstitutional. And if this happened, I think there's a pretty good case that there's a deficiency. Not if you read the policy, Your Honors. The policies are standard, you know, use-of-force type policies. There's nothing unconstitutional about the policies. Well, the policy as written, the policy says it has to be reasonable, it's very broad, and so on. But then we're told the actual implementation of the policy as interpreted by the police chief, who is the boss of all these people, says what they did is consistent with the policy. Right. That has to do with the actions of the officers. But the plaintiffs have to show for the city's liability to hold a city liable under Monell that there's a major deficiency in the policy, that the policy is deliberately indifferent to his client's rights. There's nothing in that. It's an inappropriate policy. So you're talking about the actions of officers. I understand that. But that relates not to Monell. But my point is, and I won't belabor it further, my point is that the police chief has said, I see those facts, that is consistent with the policy of the city of San Pablo. She was talking about the actions of officers were consistent with the scope of the use-of-force policy. Correct. I would see that relevant if you had a real issue in the case about what's the climate, you know, what happens generally. But you don't have that in this particular case. All you have is literally the policy. And her comment about this is consistent with the policy means nothing other than looking at the policy and judging the policy. I think it would be different if what really was at issue in this particular case was the climate, was the general pattern of behavior on part of the officers, and that would then make her comments really relevant. But not so if, you know, the whole case depends upon what the policy says. I agree, Your Honor, and you said this earlier. It's essentially an admission by the, you know, it's evidentiary in nature, but it's not substantive to reach the level of a claim against the city under ratification. It's somewhat significant in the difference. Some courts understand it, some don't. But Your Honor's right. It's evidentiary in that sense, but there's no evidence of prior instances, like in the Larez case when Chief Gates made a bunch of comments and then there was evidence in that trial that talked about use-of-force incidents, other instances of problems, and the chief was basically making comments that, you know, it was all appropriate. Well, that then related back and showed that what happened to that plaintiff was a policy and a practice of impropriety. Okay. Thank you very much. Thank you very much. Would you please put two minutes on the clock? Thank you. There is one specific policy that is at issue here as being a cause of the excessive force, and that's the find-and-bite policy. Just like in Chew v. Gates where the find-and-bite policy was found to have caused a constitutional harm. Where do you see that in the policy here, the find-and-bite? I know that you kept going back to find-and-bite and how egregious that was, but I never saw anything about a policy meaning find-and-bite. The trainer, the dog handler admitted, their own expert admitted, that the dogs are trained in find-and-bite, just like the dogs in Chew v. Gates, and it was never disputed. There's another type of training called find-and-bark. They don't use that. They use find-and-bite. So nothing within the policy. What you're saying is that there's a training which follows the policy, which focuses upon find-and-bite? Well, the training is find-and-bite. Just like in Chew, just like in Lowry for that matter, there's no policy statement on police department letterhead saying find-and-bite. It's just the handlers come in, the trainers come in, they testify, our dogs are trained in find-and-bite, as we know about find-and-bark, but we choose find-and-bite. So the question is the reasonableness of the behavior of the officers in releasing the dog when they know what the dog is going to do. Correct, and the analysis is explained there in Chew, which is reaffirmed in the Lowry decision. I mean, there's nothing at all wrong with a find-and-bite policy so long as the dog is released in order to do that in an appropriate circumstance. Correct, correct. It's just a causal factor. And, again, there's a discussion in Chew at page, I think, 1444 or 1445, footnote 12, if you're interested, Judge Nelson, that explains this. In Lowry, excuse me. Well, it's interesting because I think what you just conceded actually undermined your case a bit because what you seem to be saying and what Judge Fletcher just suggested is that it goes to the individual officer's decision in the moment, and the policy doesn't seem to address that. All the policy says is we're going to say the dogs bite instead of bark, and you're still—so, anyway, I don't want to belabor the point. And I know I'm over time. There's a discussion of this issue about reasonable conduct, following orders, following policy in the Chew decision, page 1438-39 and page 1444-45 in footnote 12. They do overlap. The reason I named the police department is sometimes police chiefs say, I'm not a policymaker for the city, but I am a policymaker for my police department. That's why I named the police department. Thank you for the extra time. Thank both sides for their helpful arguments.
judges: W. Fletcher, R. Nelson, Sessionsiii